UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
                                             :

In re: DPH HOLDINGS CORP., et al.,         :

                                    Reorganized Debtors.   :                 12 Civ. 9292 (PAE)

------------------------------------------------------------------------:              <u>OPINION & ORDER</u>

STATE OF MICHIGAN WORKERS' COMPENSATION :
INSURANCE AGENCY and STATE OF MICHIGAN
FUNDS ADMINISTRATION,                             :

                                 Defendants-Appellants,   :

                          -v-                  :

ACE AMERICAN INSURANCE COMPANY and    :
PACIFIC EMPLOYERS INSURANCE COMPANY,   :

                            Plaintiffs-Appellees.   :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      This appeal, arising out of an adversary bankruptcy proceeding, involves the scope of

workers' compensation coverage purchased from insurance carriers by the underlying debtor.  It

pits state regulators in Michigan, who argue for broad-ranging coverage, against the carriers,

who argue that the coverage they agreed to provide was narrow.  Because Michigan law provides

that the state's workers' compensation fund will provide workers compensation to employees

when an employer cannot do so, this litigation ultimately affects who is responsible for paying

workers compensation benefits to various employees of the debtor, but it does not affect whether

some entity has that responsibility.

      Presently at issue before the Court is a November 1, 2012, order by the Hon. Robert D.

Drain, United States Bankruptcy Judge, granting summary judgment in favor of the insurance

carriers, ACE American Insurance Company and Pacific Employers Insurance Company

(collectively, "ACE") on the coverage issue.  The regulators—the State of Michigan Workers'
Compensation Insurance Agency (the "Agency") and the State of Michigan Funds
Administration (the "Funds Administration," and collectively with the Agency, the "Michigan
Defendants")—appeal that order.  For the reasons that follow, the Bankruptcy Court's decision is
affirmed.

## I.  Background[1]

Delphi Corporation (or "Delphi"), the debtor in the underlying bankruptcy proceeding,
was headquartered in Troy, Michigan.  In 2005, Delphi filed for Chapter 11 bankruptcy.  In
October 2009, it was eventually reorganized into DPH Holdings Corp.  The dispute here involves
the scope of coverage under workers' compensation insurance policies that Delphi entered into
with ACE.

### A.  Michigan's Workers' Compensation Laws

Like many states, Michigan requires that employers provide their in-state employees with
workers' compensation insurance.  *See* Worker's Disability Compensation Act of 1969
("WDCA"), Mich. Comp. Laws Ann. §§ 418.101 *et seq.*  Under Michigan law, there are two
methods by which an employer can do so: (1) "[b]y receiving authorization from the director to
be a self-insurer"; or (2) "[b]y insuring against liability with an insurer authorized to transact the
business of worker's compensation insurance within [Michigan]."  Mich. Comp. Laws Ann.
§ 418.611(1).[2]  Each method requires approval from the director of the Agency, which is charged

---

[1] The Court's account of the underlying facts of this case, which are undisputed unless otherwise
indicated, is drawn from items designated for the record on appeal.  *See* Dkt. 2–3.  The Court
cites to them by the docket number used in the underlying bankruptcy adversary proceeding, No.
09-1510 (RDD) ("Bankr. Dkt.").

[2] An employer may also join with other employers in the same industry to provide for pooled
self-insurance.  Mich. Comp. Laws Ann. § 418.611(2).

with administering the WDCA. *Id.*; *id.* § 445.2011(II)(O). It is undisputed that an employer may use one, or more than one, of those methods to provide workers' compensation insurance. *See* Bankr. Op. at 142–43; Transcript of Argument ("Tr.") at 4–5, 36–37.

Four provisions of Michigan law are necessary background to this controversy. First, under the WDCA, "[t]he state accident fund and each insurer issuing an insurance policy to cover any employer not permitted to be a self-insurer under section 611 shall insure, cover, and protect in the same insurance policy, all the businesses, employees, enterprises, and activities of the employer." Mich. Comp. Laws Ann. § 418.621(2).

Second, the WDCA requires that each worker's compensation insurance policy contain the so-called "Michigan Endorsement." Mich. Comp. Laws Ann. § 418.621(4). This mandatory language (discussed in detail *infra*) is deemed to be controlling to the extent it conflicts with the language of the policy. *Id.*

Third, to assure that workers are not deprived of coverage, Michigan created the Funds Administration. It is responsible for providing additional coverage when a self-insured employer is insolvent. Mich. Comp. Laws Ann. §§ 418.501(1), 418.537.

Fourth, the WDCA requires that employers file a form known as a Form 400 with the Agency. *See* Mich. Comp. Laws Ann. § 418.625. This form gives the Agency notice of the insurance each employer has acquired.

### B. Delphi's Insurance Policies

Delphi is a corporation headquartered in and doing business in Michigan. Since 1999, Delphi was authorized and approved by the Agency to self-insure. Each year between 2000 and 2008 (except 2002), Delphi purchased two sets of insurance policies from ACE.

The first, the Retention Policies, cover liabilities that exceed Delphi's self-insured limits. The retention amount—that is, the amount required to be paid by Delphi before the Retention Policies kick in—ranges from $2 million (in 2000) to $5 million (in 2008). *See* Bankr. Dkt. 163-5, at 2; 163-18, at 2. The second, the Deductible Policies, are nationwide workers' compensation policies, which encompass both Delphi and its subsidiaries. The Deductible Policies are not merely excess coverage; rather, they provide first-dollar coverage of any benefits due under applicable workers' compensation laws. As required by law, the Deductible Policies each contain the required Michigan Endorsement. (The Retention Policies do not contain the Michigan Endorsement, and were not required to.)

Also as required by law, ACE filed Form 400s for each year that it ensured Delphi. On the Form 400s, Delphi Corporation is listed as the insured employer. In addition, the Form 400s each state:

> [T]he above referenced employer has been issued a policy of insurance by [ACE]. This policy covers all the liability imposed upon the employer by the provisions of the Michigan Workers' Disability Compensation Act for all employees in any and all of the employer's businesses.

*See, e.g.*, Bankr. Dkt. 18, at 10 (2004 Form 400). The Form 400s also state "[a] separate form 400 is required for each legal entity insured under a policy." *Id.*

### C.  Adversary Proceeding and the Bankruptcy Court's Decision

On October 8, 2005, Delphi filed for Chapter 11 protection in bankruptcy court. On January 6, 2006, the bankruptcy court authorized Delphi to assume the Retention and Deductible policies and to enter into post-petition policies and agreements. Delphi's obligations to ACE under the insurance policies are accorded administrative expense priority. Up until 2008, Delphi also continued to enter into new policies.

On October 6, 2009, ACE initiated this adversary proceeding.  It sought a declaratory judgment establishing that none of the policies covered Delphi's Michigan self-insured workers' compensation liability.  In the alternative, ACE asked the bankruptcy court to reform the policies to conform to the parties' mutual intent, such that they would not cover employees at Delphi's self-insured workplaces in Michigan.

On November 10, 2009, the Michigan Defendants moved to dismiss the adversary proceeding for lack of subject matter jurisdiction, sovereign immunity, and failure to state a claim.  They also asked that the Bankruptcy Court abstain to allow the Michigan courts and administrative bodies to resolve the dispute.  The Michigan Defendants' stake in the controversy is this:  With Delphi in bankruptcy, to the extent ACE is not liable for payment of workers' compensation due to Delphi employees, the Funds Administration may be.

In a bench decision issued on January 12, 2010, the bankruptcy court ruled against the Michigan Defendants on each of the pre-merits defenses they had interposed.  *See* Bankr. Dkt. 69.  It held that (1) it had jurisdiction over the adversary proceeding, (2) the Michigan Defendants were not entitled to sovereign immunity, and (3) abstention was unwarranted.  On an interlocutory appeal by the Michigan Defendants, all three of these rulings were affirmed.  *See In re DPH Holdings Corp.*, 437 B.R. 88, 93–94 (S.D.N.Y. 2010), *aff'd*, 448 F. App'x 134 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 51 (2012).

On August 10, 2012, in response to a separate motion by the Michigan Defendants, the bankruptcy court later lifted the litigation stay as to a discrete issue relating to the effect of the Form 400s.  The issue raised was whether ACE is liable to cover any workers' compensation claims against Delphi "solely because ACE or Pacific filed with the [Agency] any so-called Form 400 or any amendment thereto that identifies any insurance policy that names Delphi or

any Delphi affiliate."  Bankr. Dkt. 142, at 3.  Following that ruling, ACE filed suit in the Michigan Court of Claims, to resolve that question.  *See* Bankr. Dkt. 146 Ex. 1 (the "Form 400 litigation").[3]

The issue presently pending in this Court arises out of the parties' cross-motions for summary judgment.  The Michigan Defendants have conceded that the Retention Policies do not cover Delphi's first-dollar workers' compensation liability (*i.e.*, the amount up to which Delphi is self-insured under those policies). *See* Bankr. Dkt. 174 ("Bankr. Op."), at 140.  As a result, the only disputed issue is whether the Deductible Policies covered (as the Michigan Defendants assert) all of Delphi's workers' compensation liability in Michigan or (as ACE contends) none of the Michigan liability of Delphi *itself*, but only discrete subsidiaries identified in those policies. The time period covered by this dispute is October 2000 through September 2009, the period covered by the policies.[4]

On October 16, 2012, after argument, Judge Drain issued his decision from the bench. Bankr. Dkt. 174 ("Bankr. Op.").  He held, on the basis of their plain language, that the policies excluded all Delphi Corporation workplaces in Michigan from their coverage, and covered only Delphi subsidiaries in Michigan.  He further held that the Michigan Endorsement did not conflict with the coverage provided by the policies.

### D.  Appellate Procedural History

On December 20, 2012, Michigan appealed.  Dkt. 1.  On February 15, 2013, Michigan filed its opening brief.  Dkt. 8.  On April 15, 2013, ACE filed its brief in opposition.  Dkt. 13.

---

[3]  As more fully explained below, *see infra* note 7, the Michigan Court of Claims recently ruled on that question, in favor of ACE.  *See ACE Am. Ins. Co. v. Elsenheimer*, No. 12-96-MM, slip op. at 9–11 (Mich. Ct. Cl. July 8, 2013).

[4]  It is undisputed that there was no policy in effect between October 2002 and October 2003. Bankr. Op. at 140.

That same day, DPH also filed a brief.  Dkt. 14.  On May 10, 2013, Michigan filed its reply brief.

Dkt. 17.  On July 9, 2013, the Court heard argument.

## I.     Applicable Legal Standards

### A.  Summary Judgment

On appeal from a decision on a summary judgment motion, the Court reviews the

bankruptcy court's core jurisdiction, and the Court "may affirm, modify, or reverse a bankruptcy

judge's judgment, order, or decree or remand with instructions for further proceedings."  Fed. R.

Bankr. P. 8013.  The Court reviews a bankruptcy court's decision on a summary judgment

motion *de novo*.  *See In re Bayou Grp., LLC*, 439 B.R. 284, 296 (S.D.N.Y. 2010).  In conducting

such a review, the Court "decide[s] the issue[s] as if no decision had previously been rendered."

*H & C Dev. Group, Inc. v. Miner (In re Miner)*, 229 B.R. 561, 565 (2d Cir. BAP 1999).  This

Court will "review only those facts and legal arguments presented to the Bankruptcy Court."  *In

re Bayou Grp.*, 439 B.R. at 296–97 (collecting cases).

The same standards apply to summary judgment motions under Federal Rule of

Bankruptcy Procedure 7056 as to motions under Federal Rule of Civil Procedure 56.  To prevail

on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as

to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  The movant bears the burden of demonstrating the absence of a question of material fact.

In making this determination, the Court must view all facts "in the light most favorable" to the

non-moving party.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Holcomb v. Iona

Coll.*, 521 F.3d 130, 132 (2d Cir. 2008).  To survive a summary judgment motion, the opposing

party must establish a genuine issue of fact by "citing to particular parts of materials in the

record."  Fed. R. Civ. P. 56(c)(1); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).

"A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).  Only disputes over "facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

### B.  Michigan Contract Interpretation

Under Michigan law, "[t]he proper interpretation of a contract is a question of law." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007) (quoting *Coates v. Bastian Bros., Inc.*, 276 Mich. App. 498, 503 (2007)).  "Insurance policies are contracts and, in the absence of an applicable statute, are 'subject to the same contract construction principles that apply to any other species of contract.'" *Titan Ins. Co. v. Hyten*, 491 Mich. 547, 554 (2012) (quoting *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 461 (2005)).  "If the language of the contract is unambiguous, we construe and enforce the contract as written." *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 375 (2003) (citing *Farm Bureau Mut. Ins. Co. of Michigan v. Nikkel*, 460 Mich. 558, 570 (1999)).

"'An insurance contract is ambiguous when its provisions are capable of conflicting interpretations.'"  *Klapp v. United Ins. Grp. Agency, Inc.*, 468 Mich. 459, 467 (2003) (quoting *Farm Bureau Mut. Ins.*, 460 Mich. at 566).  Contracts are to be "'construed so as to give effect to every word or phrase as far as practicable.'" *Id.* (quoting *Hunter v. Pearl Assurance Co., Ltd.*, 292 Mich. 543, 545 (1940)).

"[U]nless a contract provision violates law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract

provisions as written." *Rory*, 473 Mich. at 461.  One traditional defense to enforceability is

public policy:  "The parties have the right to employ whatever terms they wish, and the courts

will not rewrite them as long as the terms do not conflict with pertinent statutes or public policy."

*State Farm Fire & Cas. Co. v. Liberty Ins. Underwriters, Inc.*, 398 F. App'x 128, 130 (6th Cir.

2010) (quoting *St. Paul Fire & Marine Ins. Co. v. Am. Home Assurance Co.* ("*St. Paul*"), 444

Mich. 560, 564 (1994)).

## II.    Discussion

The Court begins its analysis by looking first to the plain language of the policies.  Both

parties contend that the policies are unambiguous.

### A.  Coverage of the Policies

Delphi and ACE entered into eight Deductible Policies relevant here: in 2000, 2001, and

in each year from 2003 to 2008.  Each began October 1, and was in effect until the following

October 1.  These policies apply nationwide, not just to Delphi's Michigan operations.  The

policies are virtually identical for the years 2003 through 2008.  Accordingly, the Court uses the

Deductible Policy for 2008 as the basis for its analysis, noting those instances in which the 2000

and 2001 policies materially differ from the 2008 iteration.  Specifically, the Court relies on an

excerpt from the 2008 policy as representative, *see* Bankr. Dkt. 163-17 (the "2008 Policy"), on

which the parties relied both in briefing and at argument.  *See* Tr. 6, 37.

The 2008 Deductible Policy is issued to "Delphi Corporation," which is identified as the

"Named Insured" in Item 1 of the Information Page of the Policy.  2008 Policy at 2.[5]  Item 1 also

permits the applicant to expand upon the information supplied in response to Item 1, using

ensuing extension pages.  One is "[f]or other named insured"; the other is "[f]or other

---

[5] Previous iterations of the Deductible Policies had been issued in the name of "Delphi
Automotive Systems Corporation."  *See, e.g.*, Bankr. Dkt. 51-6, at 1.

workplaces."  Both were completed.  The "Schedule of Named Insured" extension page lists Delphi Corporation, and eight additional named insured—all subsidiaries of Delphi.  *Id.* at 7. The "Schedule of Other Workplaces" extension page lists, by state, workplace locations across the country for Delphi and the aforementioned subsidiaries.  *Id.* at 9–16.  As to Michigan, the list of workplaces includes 25 Delphi workplaces in Michigan.  *Id.* at 10–12.  These subsidiaries and workplaces thus are encompassed within the Named Insured section in Item 1.

The Deductible Policy also contains a "General Section," which defines terms within the contract.  *Id.* at 5.  Section B, entitled "Who is Insured," states:  "You are insured if you are an employer named in item 1 of the information page."  Section E, titled "Locations," states:  "This policy covers all of your workplaces listed in items 1 or 4 of the Information Page; and it covers all other workplaces in item 3.A. states [which include Michigan] unless you have other insurance or are self-insured for such workplaces."  Viewed in isolation, these responses to Item 1 would appear to encompass all of the listed workplaces of the named insureds.

Crucially here, however, the 2008 Deductible Policy contains a "Designated Workplaces Exclusion Endorsement."  This "Exclusion Endorsement" states:  "The policy does not cover work conducted at or from:" and then lists four insurance policy numbers.  *Id.* at 6, 29.  One such policy, "WCU C42850135," corresponds to a Retention Policy issued to Delphi Corporation in October 2008.  *See* Bankr. Dkt. 39-14.  The Retention Policy covers excess workers' compensation liability in the states of Alabama, Indiana, Michigan, and Ohio.  *Id.* at 1.  The Retention Policy states that "acceptance of this policy indicates that you are now and will remain until the end of the policy period a duly qualified self-insurer."  *Id.* at 3.  The Exclusion Endorsement is incorporated into the 2008 policy writ large via the modification on the first page, which provides that "This policy includes these endorsements and schedules," then directs

10

the reader to a list of endorsements, which includes the Exclusion Endorsement.  *See id.* at 2; Bankr. Dkt. 41-23, at 52–53.  The policies from 2003 through 2007 contain the same Exclusion Endorsement.

The issue presented, then, is how to reconcile the fact that Item 1 of the Deductible Policy lists all of Delphi's Michigan workplaces whereas the Exclusion Endorsement excludes the workplaces covered by Delphi's Retention Policy, as to which Delphi is a self-insurer.  The Court concludes that the Exclusion Endorsement controls, because it is more specific.  Under Michigan law, "specific language prevails over general language in a contract."  *Nat'l Fire Ins. Co. v. Roofmaster Const., Inc.*, No. 04-CV-71142-DT, 2005 WL 1030326, at *6 (E.D. Mich. Apr. 28, 2005) (collecting cases).  In effect, here, although Delphi's operations broadly would have been covered by the general terms of Delphi's nationally applicable 2008 policy with ACE had there been no ensuing exclusion, the specific and express exclusion of Delphi's self-insured Michigan operations, being specific, carries the day.  Significantly, the alternative construction would render the Exclusion Endorsement meaningless, in contravention of basic principles of contract construction.  *See Klapp*, 468 Mich. at 467 ("[C]ontracts must be 'construed so as to give effect to every word or phrase as far as practicable.'" (quoting *Hunter*, 292 Mich. at 545)). Accordingly, the Court holds, the plain language of the 2003 through 2008 Deductible Policies expressly excludes workers' compensation liability for the operations covered by the Retention Policies.

Also highly probative as to this point, the Deductible Policies for all years each contain separate sections specific to each covered state.  *See, e.g.*, Bankr. Dkt. 1-6, at 90 (2001 Deductible Policy); *Id.* 41-13, at 114 (2005 Deductible Policy).  Each state-specific section includes an extension of the Information Page listing "Classifications."  These "Classifications"

relate back to Item 4 of the Information Page, which provides: "The premium for this policy will be determined by our Manual of Rules, Classifications, Rates and Rating Plans."  Notably, each state-specific section lists the insured employers that are covered within that state.  For example, in 2005 in Arkansas, only Delphi Corp. was insured.  *See* Bankr. Dkt. 41-13, at 54.  In contrast, that same year in California, Delphi Corp. was insured, as were subsidiaries Delphi Diesel and PHI (Packard Hughes Interconnect).  *Id.* at 60–61.  As to Michigan, the Michigan extension page for 2000 through 2008 (excluding 2002, when there was no policy at all) does not list Delphi as an insured.  Instead, these policies list only Delphi's subsidiaries Delphi Diesel, ASEC, and Mechatronics.  *Id.* at 114–15 (2005 policy); *see also* 2008 Policy at 22.  Indeed, none of the Michigan Information Extension Pages in any year include Delphi Corporation on their lists of "Classifications," although extension pages for many other states do.

As to the 2000 and 2001 Deductible Policies, the analysis is slightly different, but the bottom line is the same.  There is no Designated Workplaces Exclusion Endorsement for those years.  However, Section 3.A of the Information Page for those policies states that "Part One of the policy applies to the Workers' Compensation Law of the states listed," and then refers to the "information page attached."  Many state information pages follow, including one for Michigan.  *See* Bankr. Dkt. 41-2, at 95–96; *id.* 41-6, at 90–91.  The state information page for Michigan expressly limits coverage to Delphi's designated subsidiaries.  On this basis, the Court concludes that only the named Delphi subsidiaries in Michigan, and not all Delphi Corporation workplaces in Michigan, were covered.

In sum:  The Court concludes, on the basis of the plain language of the Deductible Policies covering 2000 through 2008 (save 2002), that they do not extend workers compensation insurance to employees of Delphi Corporation in Michigan.  Instead, they extend such coverage

in Michigan only to the subsidiaries listed in the state-specific information pages that form part of each year's Deductible Policy.  This conclusion is bolstered in the policies for 2003 through 2008, which expressly exclude any coverage of Delphi's self-insured workplaces in Michigan. That was the shared intention of the parties, Delphi and ACE, who entered into these policies.[6]

### B.  The Michigan Endorsement

Determination of the subjective intent of the parties, as revealed in the plain language of the Deductible Policies, does not, however, end the inquiry.  Having found that the Deductible Policies' text supports ACE's claim that these policies do not cover all Michigan workplaces but only designated subsidiaries, the Court now turns to the question of whether that reading of the policies conflicts with the Michigan Endorsement, and thus must be overridden.

As noted, the Michigan Endorsement is required by statute.  It is identical in all the Deductible Policies relevant here; it appears as a separate page within each policy.  *See, e.g.*, 2008 Policy at 24; Bankr. Dkt. 41-13, at 117 (the "Mich. Endorsement").  In relevant part, the Endorsement provides:

> [t]hat this insurance contract or policy shall for all purposes be held and deemed to cover all the businesses the said employer is engaged in at the time of the issuance of this contract or policy and all other businesses, if any, the employer may engage in during the life thereof, and all employees the employer may employ in any of his businesses during the period covered by this policy.

---

[6] Although it is not necessary to its decision, the Court notes that extrinsic evidence of the intent of the negotiating parties firmly supports this conclusion:  These parties (ACE and Delphi) have both offered unrefuted evidence that they did not intend the Deductible Policies to cover Delphi's self-insured locations in Michigan.  As an indicator of the parties' intent, ACE also persuasively explains that the economics of the policies—*i.e.*, the amount paid in premiums for the coverage—is consistent with furnishing workers compensation coverage for a limited number of subsidiaries in Michigan, but not for also covering Delphi's self-insured locations. ACE Br. 10–13, 38–39.  Consistent with this, DPH has submitted a brief on this appeal concurring with ACE's position as to what the parties' intent was at the time they entered into the policy.  Dkt. 14.

Mich. Endorsement § 5(e).  The Michigan Endorsement further provides "[t]hat all the provisions of this contract, if any, which are not in harmony with this paragraph are to be construed as modified hereby, and all conditions and limitations in the policy, if any, conflicting herewith are hereby made null and void."  *Id.* § 5(h).

It is undisputed that this endorsement modifies insurance coverage such that it covers all employees and business of the "insured employer."  *Id.* §§ 2, 5.  The issue before the Court is what entity is the "insured employer" for the purposes of the Michigan Endorsement.  The Michigan Defendants note that at the top of the page of the Endorsement, "Delphi Corporation" is listed (consistent with Item 1 of the overall Deductible Policy) as the "Named Insured."  The Michigan Defendants further note that, in the course of defining terms, the Endorsement recites that "You are the 'insured employer.'"  *Id.* § 2.  The Michigan Defendants argue that "you" naturally refers to the named insured listed both at the top of the Endorsement and in Item 1 of the Information Page.  Thus, they argue, Delphi, as the "Named Insured," should be construed to be the "insured employer" referred to throughout the Endorsement.

The Court is unpersuaded.  As ACE fairly notes, nowhere in the Endorsement (or the rest of the policy, for that matter) is Delphi referred to as the "insured employer."  And the term "insured employer" is not tantamount to "named insured."  Instead, because "insured employer" is not a defined term within the Michigan Endorsement or, indeed, the rest of the policy, it is appropriate to review the totality of the Deductible Policy to derive the name of the insured employer.  And, for the reasons reviewed above, the balance of the policy makes clear that although Delphi Corporation is the parent company in whose name the nationwide policy was issued, within Michigan, the Deductible Policy applies only to discrete subsidiaries of Delphi, and not to the parent company itself, which is not insured under the policy.  For purposes of

14

discerning who the "insured employer" is, it is they, not the parent company, who are the *insured* employers.

Also significant as to this issue, the Endorsement provides that "[t]his endorsement *applies only to the insurance provided by the policy* because Michigan is shown in item 3.A. of the Information Page."  (emphasis added).  Judge Drain reasoned below that "that language means that it applies literally only to the insurance provided by the policy, the word 'only' modifying the first noun after it, which is 'insurance provided by the policy.'"  Bankr. Op. at 150.  This Court joins in that analysis.  Put another way, the scope of the Endorsement is limited to the coverage *actually provided* by the policy.  This clause effectively directs the reader to refer back to the whole of the policy to determine who is covered as the "insured employer," and here, the employer consists of discrete subsidiaries, not the excluded parent company.

Finally, to read the Michigan Endorsement to cover as the "insured employer" only the entity listed as the named insured (*i.e.*, Delphi Corp.) on the overall policy would lead to absurd results.  And under Michigan law, "contracts must be construed consistent with common sense and in a manner that avoids absurd results." *Kellogg Co. v. Sabhlok*, 471 F.3d 629, 636 (6th Cir. 2006) (citing *Parrish v. Paul Revere Life Ins. Co.*, 103 Mich. App. 95, 97 (1981)).  Specifically, reading the Endorsement to apply to Delphi on account of its having been listed as the "named insured" would not only contravene the clear intent of the parties—it would exclude from the policies the Delphi subsidiaries who are, in fact, quite clearly insured under the policies.

For these reasons, the Court holds that the policy provides workers' compensation insurance coverage only to those employers named on the Michigan classification page, *i.e.*, those subsidiaries of Delphi which are covered by ACE for workers' compensation liability in Michigan.  Accordingly, only these employers (*e.g.*, in 2005, Delphi Diesel, ASEC, and

Mechatronics; in 2008, just Delphi Diesel) are "insured employers" for the purposes of the Michigan Endorsement.  Pursuant to the Michigan Endorsement, all employees and businesses of *these* named subsidiaries are required to be covered by the policy; however, that obligation does not extend to the employees and businesses of their parent company, Delphi.

### C.  Michigan Public Policy

In a related argument, the Michigan Defendants appear to claim that the Deductible Policies, if construed to cover only discrete subsidiaries of Delphi, violate Michigan workers' compensation laws.  Specifically, the Michigan Defendants rely on a provision in the WDCA which states:

> The state accident fund and each insurer issuing an insurance policy to cover any employer not permitted to be a self-insurer under section 611 shall insure, cover, and protect in the same insurance policy, all the businesses, employees, enterprises, and activities of the employer.

Mich. Comp. Laws Ann. § 418.621(2).  On its face, this provision clearly provides that workers compensation coverage of an employer must extend to all of its businesses, and thus prevents an insurer from cherrypicking for coverage only particular workplaces or employees within an employer.   However, the Michigan Defendants appear to extract from it a broader rule, that an insurer cannot provide coverage only to certainly subsidiaries of a parent; rather, if one in-state subsidiariary of a parent is covered, so must all.  On this premise, the Michigan Defendants further argue, the contrary intent of the parties must be disregarded, because Michigan law "bars any evidence of intent or mistake, and requires the policy to be enforced as written."  Appellant Br. 32 (citing *New Amsterdam Cas. Co. v. Moss*, 312 Mich. 459 (1945)); *see also New Amsterdam Cas. Co.*, 312 Mich. at 472.

This argument can be quickly put to one side.  Section 418.621(2) does not, by its terms, impose a rule that all subsidiaries within a corporate family must be insured under a workers'

compensation policy together if any one of them is insured.  Instead, its all-or-none directive is fixed at the level of the employer.  ACE's construction of the Deductible Policies (adopted by the bankruptcy court below) is consistent with that.  It recognizes each covered Delphi subsidiary as an employer and extends coverage throughout each covered subsidiary.  There is no basis on the record to treat instead the parent company, Delphi, as the "employer" of the employees of its subsidiaries.  The Michigan Defendants have not cited legal authority under which all entities within a corporate umbrella must be covered by a workers' compensation policy if any of them are covered.  There is, thus, no conflict between the Deductible Policies and Michigan state law, so as to require the Court to override the intent of the negotiating parties reflected in the text of the Deductible Policies.  And "courts will not rewrite [the terms of a contract] as long as the terms do not conflict with pertinent statutes or public policy."  *St. Paul*, 444 Mich. at 514.

### D.  Sovereign Immunity

Michigan separately argues that the bankruptcy court's decision should be reversed because it impermissibly infringed on the State of Michigan's sovereign immunity.  The Michigan Defendants raised a similar argument earlier in this litigation.  The Second Circuit rejected it, holding that Michigan's sovereign immunity had not been infringed by the institution of this adversary proceeding:

> The scope of the States' waiver of sovereign immunity includes proceedings implicating the bankruptcy court's traditional *in rem* authority—"a narrow jurisdiction that does not implicate state sovereignty to nearly the same degree as other kinds of jurisdiction,"—as well as "proceedings necessary to effectuate the *in rem* jurisdiction of bankruptcy courts."  Since the adversary proceeding here is an *in rem* proceeding (or, at least, is otherwise necessary to effectuate the *in rem* jurisdiction of the Bankruptcy Court), it does not offend the Michigan Defendants' sovereign immunity.

*In re DPH*, 448 F. App'x at 137 (quoting *Cent. Va. Comm. Coll. v. Katz*, 546 U.S. 356, 378 (2006)).

17

Seeking to avoid this holding, the Michigan Defendants argue that even if the adversary proceeding itself does not violate Michigan's sovereign immunity, the *effect* of the bankruptcy court's decision in ACE's favor does.  They argue that "the effect of the decision [is] to compel the state to act by reading insurance policies," Mich. Br. 36, because under the decision the state could not rely on the designation on a Form 400 of who the named insured was.  In this vein, the Michigan Defendants note that the bankruptcy judge, during the argument preceding his decision from the bench, explained that the state, to discern who the insured employer was, should "read the Policy."  Bankr. Op. at 130.  In fact, the Michigan Defendants argue, Michigan law requires employers to file only the Form 400 with the Agency, and for the state to learn the identity of the covered corporate subsidiaries, it will now need to read the underlying policies.

As an initial matter, the Court notes that the Michigan Defendants' argument that the designation of a "named insured" on a Form 400 is determinative of workers' compensation liability is not before this Court.   That question is pending before the Michigan state courts in the parallel proceeding, where to date it has been resolved in the insurers' favor.[7]  This lawsuit solely concerns the Deductible Policies, and whether they—as a result of their text, the Michigan Endorsement, or application of state law—provide broadly for coverage of all employees of the Delphi parent company, not merely designated subsidiaries.

As to the issue of sovereign immunity, the fact that this adversary proceeding is within the bankruptcy court's *in rem* jurisdiction does not resolve that issue.  *See Tenn. Student Assistance Corp. v. Hood*, 541 U.S. 440, 450 (2004) ("Nor do we hold that every exercise of a bankruptcy court's *in rem* jurisdiction will not offend the sovereignty of the State.").  However,

_____

[7] *See supra* note 3.  The Michigan Court of Claims held that the filing of a Form 400 under Mich. Comp. Laws Ann. § 428.625 does not itself create a "statutory contract" requiring the insurer to provide coverage beyond that provided in the underlying policy.  *ACE Am. Ins.*, No. 12-96-MM, slip op. at 9–11.

the Second Circuit has squarely held, as noted above, that the interpretation of the policies presented here does not infringe on Michigan's sovereign immunity, because this proceeding is necessary to effectuate the bankruptcy court's *in rem* jurisdiction.  In the event that the Michigan courts ultimately resolve the Form 400 litigation in Michigan's favor, in effect so as to hold that the designation of Delphi as the "named insurer" on a Form 400 filed with the state gives rise to workers' compensation liability on Delphi's part, that decision would then supply a different basis other than the one here for imposing such liability on the insurers.  It would appear to render academic the decision here as to who is covered in fact by the Deductible Policies. However, at this point, with no such ruling in favor of the Michigan Defendants on the Form 400 issue having been made by the Michigan courts, there is no basis to find infringement on sovereign immunity by the Court's construction of the Deductible Policies here.

### E.  Abstention

Finally, the Michigan Defendants argue that the bankruptcy court erred by not abstaining. They ask the Court to vacate the judgment and abstain from resolving ACE's claims.  They urge this result based on both permissive abstention and *Burford* abstention.

#### 1.  Permissive Abstention

Under 28 U.S.C. § 1334(c)(i), a court may abstain from hearing a particular bankruptcy proceeding "in the interest of comity with State courts or respect for State law."  The Michigan Defendants argue that because this adversary proceeding turns on a question of state law— "contract interpretation within the overlap of the Michigan statutory workers' compensation scheme"—the bankruptcy court should have abstained.  *See* Mich. Br. 38.

ACE responds that this argument was waived, because the Michigan courts did not raise it before the bankruptcy court.  That argument is not without force.  But even if that were not the

case, the Court would not vacate the judgment on that ground, because the Court does not find that the bankruptcy court abused its discretion in declining to abstain. *See In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 775 (2d Cir. 1996) (standard of review of decision by lower court not to abstain is abuse of discretion). "Courts must be 'sparing' in their exercise of permissive abstention." *CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*, 396 B.R. 602, 607 (S.D.N.Y. 2008) (quoting *Winstar Holdings, LLC v. Blackstone Grp. L.P.*, No. 07 Civ. 4634 (GEL), 2007 WL 4323003, *5 (S.D.N.Y. Dec. 10, 2007)). They "may abstain only for a few extraordinary and narrow exceptions." *In re WorldCom, Inc. Sec. Litig.*, 293 B.R. at 332 (citation omitted).

Abstention is appropriate primarily where there are novel state-law claims that "involve arcane or idiosyncratic provisions of state law that would warrant abstention based on comity concerns." *Kirschner v. Bennett*, No. 07 Civ. 8165 (GEL), 2008 WL 1990669 (S.D.N.Y. May 6, 2008) (citation omitted). That standard, however, is not met here. Interpreting the Deductible Policies presents an unremarkable question of contract interpretation, albeit in a case involving dense contract documents, as illustrated by the preceding discussion. These questions do not, however, turn on "arcane or idiosyncratic provisions of state law." To be sure, there may or may not be novel or arcane questions of state law presented by the  issue of the impact of Form 400 on the insurers' legal obligations, but those questions are not pending before this Court. Accordingly, abstention is not appropriate, and the bankruptcy court did not abuse its discretion in declining to abstain.

### 2. *Burford* Abstention

Abstention under *Burford v. Sun Oil Co.* is appropriate where intervention of the lower

federal courts is likely to result in "[c]onflicts in the interpretation of state law, dangerous to the

success of state policies."  319 U.S. 315, 334 (1943).  More specifically,

> a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

*Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 649–50 (2d Cir. 2009) (quoting *New Orleans*

*Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989)).

*Burford* abstention is not appropriate here.  This case does not intrude on state regulatory

or policy preserves.  By all accounts, the Deductible Policies being interpreted are unique to the

parties here, and the critical issues turn on construction of ACE Policy documents.  The Court's

construction of those materials ought have little effect outside this proceeding.  The only issue

likely to implicate state policies is the issue of whether an insurer is bound by the identification

of its client on a Form 400.  But that dispute, again, is not before this Court.

The Michigan Defendants further contend that the WDCA requires that "all questions

arising under this act . . . be determined by the bureau or a worker's compensation magistrate, as

applicable," Mich. Comp. Laws Ann. § 418.841(1), and therefore that the Court should abstain

so as to allow the specialized forum in Michigan to resolve this dispute.  But the Court is not

interpreting the language of the Michigan Endorsement or of the WDCA.  Rather, the Court's

task here has principally been to determine, based on the language of the Deductible Policies

themselves, what entity is the "insured employer," and then to confirm that Michigan state law

does not override that contractual understanding, which it does not. The interpretation of the policies freely entered into by Delphi and ACE is unlikely to affect state interests or have ripple effects beyond this litigation. Accordingly, abstention is not warranted.

## CONCLUSION

For the reasons stated above, the decision of the bankruptcy court is affirmed. The Clerk of Court is directed to close the case.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: August 1, 2013
New York, New York